IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**NIKE, INC.**,

        Plaintiff,

vs.

**HELEN WOO, NFINITY PRODUCTS AND SERVICES, INC.**,

        Defendants.

Civil Case No. 10-342-KI

OPINION AND ORDER

    Amy Joseph Pedersen
    Bruce W. Klaw
    Per A. Ramfjord
    Andrea H. Thompson
    Stoel Rives LLP
    2600 Standard Insurance Center
    900 SW 5th Avenue
    Portland, Oregon  97204

        Attorneys for Plaintiff

Page 1 - OPINION AND ORDER

...

David J. Zarosinski
Eric C. Hartwig
Zarosinski Law Group, P.C.
520 SW Sixth Avenue, Suite 1200
Portland, Oregon  97204

    Attorneys for Defendants

KING, Judge:

Plaintiff Nike seeks a temporary restraining order ("TRO") ordering that (1) the present litigation in Oregon federal court should not be enjoined by order of any other court, (2) defendants Helen Woo and NFinity Products and Services, Inc. shall not seek an injunction or restraining order in the litigation they have filed in Georgia, Case No. 1:10-CV-1018, or in any other litigation, (3) the sought TRO shall have no effect on the parties' ability to seek discovery or to file motions to transfer or dismiss this or any other litigation, and (4) the sought TRO is binding on Woo and NFinity, their officers, agents, servants, employees and attorneys.  For the following reasons, I deny the motion.

## FACTS

Defendant Helen Woo worked as a Senior Researcher in plaintiff Nike's Sport Research Laboratory.  Woo worked for Nike since January 13, 1997, when she started as a Research Assistant.  Since then, she was promoted multiple times until she obtained her most recent position as a Senior Researcher.  On the first day of her employment in 1997, Woo signed a Covenant Not to Compete and Non-Disclosure Agreement ("the Agreement").  The Agreement, under the subsection entitled "Competition Restriction," reads,

> During Employee's employment by Nike, under the terms of any employment contract or otherwise, and for one (1) year thereafter, (the "Restriction Period"), Employee will not directly or indirectly, own, manage, control, or participate in the ownership, management or control of, or be employed by, consult for, or be connected in any manner with, any business engaged anywhere in the world in the athletic footwear, athletic apparel or sports equipment and accessories business, or any other business which directly competes with Nike or any of its subsidiaries or affiliated corporations.

Notice of Removal Ex. 1 at 13-4.  The Agreement, also reads in part, under the subsection entitled "Additional Consideration,"

> As additional consideration for the covenant not to compete described above, Nike shall pay Employee a monthly severance payment equal to Employee's last monthly base salary while the Restriction Period is in effect, payable in accordance with Nike's payroll practices.

Id. Ex. 1. at 14.  Finally, the Agreement also provides a choice of law clause, which reads,

> This Agreement, and Employee's employment hereunder, shall be construed according to the laws of the State of Oregon.  Employee further hereby submits to the jurisdiction of, and agrees that exclusive venue for any action or proceeding involving this Agreement shall lie in, the federal and state courts of the State of Oregon.

Id. Ex. 1 at 16-7.

Despite these conditions, on Monday, March 8, 2010, after a paid one week vacation from her position at Nike, Woo resigned via telephone from Georgia, where she had accepted a job with defendant NFinity.  NFinity's Georgia attorneys had advised Woo that "it is unlikely the non-compete may be upheld within the state of Georgia," where, as of March 8, she resided. Notice of Removal Ex. 1 at 45.  According to Woo's supervisor, on the phone call Woo said that "she was sorry to leave Nike under such sudden circumstances, but that NFinity's lawyers told her to do it that way in order to get around her noncompetition agreement with Nike." Id. at 37.

Page 3 - OPINION AND ORDER

To date, Woo has not commenced employment with NFinity.  Nevertheless, all parties to this lawsuit have already spent substantial time and money litigating whether she ultimately may commence employment with NFinity prior to the end of the one year period provided for in the Agreement.

Nike filed this lawsuit in Oregon state court on March 11, 2010, and defendants removed the case to federal court on March 29, 2010.  On March 30, 2010, this court heard oral argument on Nike's motion for a different TRO, which sought to enjoin Woo from being employed by NFinity.  Because Woo was not yet in violation of her Agreement with Nike, I entered an order only to the extent that the defendants stipulated they would not begin Woo's employment with NFinity or use any of Nike's proprietary or confidential information without first giving 10 days written notice.  I noted, however, that if the 10-day notice were given, Nike could come back to the court with the TRO and I would sign it.

On the same day as the TRO hearing, March 30, 2010, NFinity and Woo filed civil action number 10A-02871-9 in Gwinnett County Court in Georgia.  On April 5, 2010, Woo and NFinity sought a TRO in Gwinnett County to the effect that the Agreement is facially overbroad and unenforceable, and that Nike is prohibited from enforcing the noncompetition agreement with Woo.  On April 6, 2010, Nike removed the Gwinnett County action to federal court in Georgia.  A hearing on NFinity and Woo's Georgia motion for a TRO is scheduled for Monday, April 11, 2010.

## LEGAL STANDARDS

The standard for obtaining a temporary restraining order is generally the same as the standard for obtaining a preliminary injunction.  To obtain preliminary injunctive relief, a party

Page 4 - OPINION AND ORDER

must meet one of two tests, described by the Ninth Circuit as "traditional" and "alternative." Under the "traditional" test, preliminary relief may be granted if the court finds that (1) the moving party will likely succeed on the merits; (2) the moving party will suffer irreparable injury if the preliminary relief is not granted; (3) the balance of potential harm favors the moving party; and (4) the advancement of the public interest favors granting injunctive relief. Johnson v. California State Bd. Of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995); Rohman v. City of Portland, 909 F. Supp. 767, 771 (D. Or. 1995).

Under the "alternative" test, the moving party may meet its burden by showing either (1) probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. Johnson, 72 F.3d at 1430; Rohman, 909 F. Supp. at 771. The two prongs of the alternative test have been described as actually one test: "a continuum in which the required showing of harm varies inversely with the required showing of meritoriousness." Rohman, 909 F. Supp. at 771 (quoting San Diego Comm. v. Governing Bd., 790 F.2d 1471, 1473, n. 3 (9th Cir. 1986)); see also United States v. Laerdal Mfg. Corp., 853 F. Supp. 1219, 1225-26 (D. Or. 1994), aff'd, 73 F.3d 852 (9th Cir. 1995) ("These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases") and Lee v. State, 869 F. Supp. 1491, 1501 (D. Or. 1994) ("The logical corollary is that the greater the degree of irreparable injury, the less probability of success on the merits is required."). Even if the balance of hardships tips decidely in favor of the moving party, it must be shown "as an irreducible minimum" that there is a fair chance of success on the merits. Johnson, 72 F.3d at 1430.

## DISCUSSION

Nike argues that the court should grant its Motion for TRO because of the "first-to-file" rule.

"There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 94-5 (9th Cir. 1982). Put otherwise, it is a "discretionary doctrine which permits one district to decline judgment on an issue which is properly before another district." Church of Scientology of California v. U.S. Dept. of Army, 611 F.2d 738, 749 (9th Cir. 1979). The doctrine's so-called "first-to-file rule" also "allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court." Alltrade v. Uniweld Products, Inc., 946 F.2d 622, 623 (9th Cir. 1991). Under the first-to-file rule, "when a district court has jurisdiction over all parties involved, it may enjoin later filed actions." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

Yet, "there is no rigid or inflexible rule for determining priority of cases pending in federal courts involving the same subject matter." Church of Scientology, 611 F.2d at 750. The first-to-file rule is not to be "mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." Pacesetter Systems, 678 F.2d at 95. It is "designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." Church of Scientology, 611 F.2d at 750.

Here, I have the discretion to issue a TRO temporarily enjoining Woo and NFinity from proceeding with the Georgia litigation only if it appears likely that this court has personal

jurisdiction over all parties.  Were I to grant the TRO, the issue of whether the court has personal jurisdiction over NFinity would be litigated extensively.

Nike argues that Judge Brown's decision in Stockamp & Assoc., Inc. v. Accretive Health, No. CV 04-1443, 2005 WL 425456 (D. Or. Feb. 18, 2005) dictates that this court likely has personal jurisdiction over NFinity and, therefore, a TRO is appropriate at this juncture.

In Stockamp, corporate defendant Accretive hired away two individual defendants who were under a noncompetition agreement with plaintiff Stockamp.  Id. at *1.  The matter before the court was defendant Accretive's Motion to Dismiss for Lack of Personal Jurisdiction.  Id. Judge Brown, after an evidentiary hearing, applied the traditional constitutional tests for personal jurisdiction, and held that an Oregon court had personal jurisdiction over Accretive.  See id.  I note however, that at a much earlier stage of the litigation, when plaintiff sought a TRO to enjoin an individual defendant from working for Accretive, Judge Brown was not faced with the question of whether to issue a TRO against Accretive, over whom personal jurisdiction was not yet established.  Stockamp & Assoc., Inc. v. Accretive Health, No. CV 04-1443, 2004 WL 2847893 at *1 (D. Or. Dec. 10, 2004).

Here, there is no question that the Georgia federal court has personal jurisdiction over all the parties.  Due to the choice of law clause, a federal judge in Georgia will likely perform the same analysis, applying Oregon law, that this court would apply.  There is no reason for Nike to fear otherwise.  In addition, should Woo and NFinity be enjoined from working together at some point in the future, it will ultimately be up to a Georgia court to decide whether to enforce the injunction.

Accordingly, I find that allowing the TRO to take place on Monday, April 12, 2010, will avoid placing an unnecessary burden on the federal judiciary because the Georgia court will be allowed conduct a contract analysis unburdened by personal jurisdiction analysis.  In addition, allowing the Georgia court to assess the enforceability of the Agreement will potentially avoid the embarrassment of conflicting judgments in the future.  Finally, I must note that I am deeply reticent to enjoin another federal court from doing anything whatsoever, including issuing an injunction against this court.  Such an order would be directly contrary to the principles of comity and the first-to-file doctrine, set forth above.  Should the Georgia federal court elect to invoke the first-to-file rule, and decline to decide the case, Woo and NFinity may bring their Motion for a TRO in this court, and I will consider them.

For the abovementioned reasons, I decline to use the first-to-file rule as a basis for issuing the TRO Nike seeks.

## CONCLUSION

Plaintiff Nike's Motion for Temporary Restraining Order (#11) is denied.

IT IS SO ORDERED.

Dated this      9th           day of April, 2010.

　　　　　　　　　　　　　　　　　　 /s/ Garr M. King
　　　　　　　　　　　　　　　　　　Garr M. King
　　　　　　　　　　　　　　　　　　United States District Judge